United States District Court
Southern District of Texas

**ENTERED**

January 17, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MIGUEL GARCIA and LUPE GARCIA, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. H-17-1587 |
| LIBERTY INSURANCE CORPORATION[1] and JEFF DIXON, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[2] is Defendants' Motion for Summary Judgment (Doc. 14). The court has considered the motion, the response, the summary judgment evidence, all other briefing on the motion, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that the motion be **GRANTED**. Plaintiffs' request for a hearing on Defendants' motion for summary judgment is **DENIED**.

## I.  Case Background

This insurance action arose out of a loss claim for storm damage under Plaintiffs' homeowners insurance policy.

---

[1]    Plaintiffs incorrectly named Liberty Insurance Corporation as "Liberty Mutual Insurance" in their petition. See Doc. 1-2, Ex. 2 to Not. of Removal, Pls.' Orig. Pet.

[2]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 15, Ord. Dated May 3, 2018.

A.   **Factual Background**[3]

For the period May 19, 2014, to May 19, 2015, Defendant Liberty Insurance Corporation ("Liberty") issued a homeowners policy to Plaintiffs on their residential property ("Policy").[4] The deductible for losses resulting from wind and/or hail was $2,590.[5]

The Policy required that Defendant Liberty notify Plaintiffs of its decision to pay or deny within fifteen business days of receiving any information requested from Plaintiffs.[6] The loss-payment provision stated in relevant part:

> If we [Defendant Liberty] notify you [Plaintiffs] that we will pay your claim, or part of your claim, we must pay within 5 "business days" after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.[7]

The loss-settlement provision stated that the limit of liability for covered losses to the dwelling would be replacement cost value

---

[3]   The court includes here only facts supported by evidence to which the parties cited. Other details in the parties' briefs, which are not material to the resolution of the pending motion, are omitted for lack of evidentiary support.

[4]   See Doc. 14-1, Ex. A to Defs.' Mot. for Summ. J., LibertyGuard Deluxe Homeowners Pol'y, Decls. (pp. 2-4 of 56).

[5]   See id.

[6]   See Doc. 14-1, Ex. A to Defs.' Mot. for Summ. J., LibertyGuard Deluxe Homeowners Pol'y, Amendatory Endorsement, Section I - Conditions, ¶ B(2)(b) (pp. 44-45 of 56).

[7]   Doc. 14-1, Ex. A to Defs.' Mot. for Summ. J., LibertyGuard Deluxe Homeowners Pol'y, Amendatory Endorsement, Section I - Conditions, ¶ I (p. 46 of 56).

("RCV") subject to listed limitations.[8]  However, Defendant Liberty agreed to "pay no more than the actual cash value ("ACV") of the damage until actual repair or replacement [was] complete."[9]  An appraisal provision in the Policy stated:

> If you [Plaintiffs] and we [Defendant Liberty] fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.  Each party will:
> 1.  Pay its own appraiser; and
> 2.  Bear the other expenses of the appraisal and umpire equally.[10]

On May 26, 2015, Plaintiffs submitted a claim to Defendant Liberty regarding water damage to the insured dwelling, which Plaintiffs claimed was caused by a storm on April 19, 2015.[11] Plaintiffs sought "repair and/or replacement of the roof and

---

[8]    See Doc. 14-1, Ex. A to Defs.' Mot. for Summ. J., LibertyGuard Deluxe Homeowners Pol'y, Amendatory Endorsement, Section I - Conditions, ¶ C(2) (Doc. pp. 45-46 of 56).

[9]    Doc. 14-1, Ex. A to Defs.' Mot. for Summ. J., LibertyGuard Deluxe Homeowners Pol'y, Amendatory Endorsement, Section I - Conditions, ¶ C (Doc. p. 46 of 56).

[10]    Doc. 14-1, Ex. A to Defs.' Mot. for Summ. J., LibertyGuard Deluxe Homeowners Pol'y, Section I - Conditions, ¶ E.

[11]    See Doc. 14-2, Ex. B to Defs.' Mot. for Summ. J., Estimate of Damages Dated June 4, 2015; Doc. 24-1, Ex. 1 to Pls.' Reply to Def.'s Suppl. Brief in Support of Defs.' Mot. for Summ. J., Activity Rep. p. 1.

3

interior water damages to the [p]roperty."[12]  Defendant Jeff Dixon ("Dixon"), an adjuster, inspected Plaintiffs' residence three days after Plaintiffs filed the claim.[13]

Defendant Dixon noted in the claim activity report that he found hail damage to the gutters on three sides of the residence but no hail damage to the visible portions of the roof.[14]  He also noted that two tarpaulins on five-foot-by-ten-foot sections of the roof precluded verification of missing or damaged shingles in those areas but found that the placement of the tarpaulins caused damage to the roof which necessitated the replacement of the affected shingles.[15]  Defendant Dixon further observed water stains in the ceilings of the master bedroom and bathroom.[16]

In Defendant Dixon's estimate report, which was dated June 4, 2015, he assessed the damage to the roof shingles, gutters, and master bedroom and bathroom ceilings, as well as costs for the disposal of debris and the replacement of a damaged grill cover.[17] Defendant Dixon concluded that the RCV for all damage was $1,909.58

---

[12]     Doc. 1-2, Ex. 2 to Not. of Removal, Pls.' Orig. Pet.

[13]     See Doc. 14-2, Ex. B to Defs.' Mot. for Summ. J., Estimate of Damages Dated June 4, 2015; Doc. 24-1, Ex. 1 to Pls.' Reply to Def.'s Suppl. Brief in Support of Defs.' Mot. for Summ. J., Activity Rep. p. 1.

[14]     See Doc. 24-1, Ex. 1 to Pls.' Reply to Def.'s Suppl. Brief in Support of Defs.' Mot. for Summ. J., Activity Rep. p. 1.

[15]     See id. pp. 1-2.

[16]     See id. p. 2.

[17]     See Doc. 14-2, Ex. B to Defs.' Mot. for Summ. J., Estimate of Damages Dated June 4, 2015.

and the ACV was $1,833.63.[18]   In a letter dated June 4, 2015, Defendant Liberty informed Plaintiffs that the amount of loss did not exceed their Policy deductible of $2,590.[19]   Subsequently, Plaintiff Miguel Garcia hired Mars Roofing to provide a repair bid.[20]   On July 6, 2015, Mars Roofing provided an estimate of $2,236.48, an amount that also was less than the deductible.[21]

On April 14, 2017, Plaintiffs filed suit against Defendants in Texas state court.[22]   On September 5, 2017, Defendant Liberty sent Plaintiffs a letter invoking Defendant Liberty's right to appraisal under the terms of the insurance contract.[23]   The appraisal award was issued six months later on March 5, 2018.[24]   Plaintiff was awarded a total RCV of $29,891.13, which resulted in a post-

---

[18]   See Doc. 14-2, Ex. B to Defs.' Mot. for Summ. J., Estimate of Damages Dated June 4, 2015.

[19]   See Doc. 14-3, Ex. C to Defs.' Mot. for Summ. J., Letter from Def. Liberty to Pls. Dated June 4, 2015.

[20]   See Doc. 14-4, Ex. D to Defs.' Mot. for Summ. J., Proposal/Contract Dated July 6, 2015.

[21]   See id.
Although not cited to evidence, Defendants represented in their brief that, "[u]pon receipt of this one-page proposal/contract from Mars Roofing, a [Defendant] Liberty representative called Plaintiffs and advised that this estimate still remain[ed] below the applicable deductible resulting in no payment." Doc. 14, Defs.' Mot. for Summ. J. p. 3.  This statement is not material to the issues addressed in the parties' briefs.

[22]   See Doc. 1-2, Ex. 2 to Not. of Removal, Pls.' Orig. Pet.

[23]   See Doc. 1-2, Ex. 2 to Not. of Removal, Pls.' Orig. Pet.; Doc. 14-7, Ex. G to Defs.' Mot. for Summ. J., Letter from J. Mark Kressenberg to Sam K. Mukerji, et al., Dated Sept. 5, 2017.

[24]   See Doc. 14-8, Ex. H to Defs.' Mot. for Summ. J., Appraisal Award.

depreciation ACV amount of $25,284.45.[25]

On March 19, 2018, ten business days after the issuance of the appraisal award, Defendant Liberty notified Plaintiffs' attorney that it accepted the appraisal award and made payment.[26] Defendant Liberty enclosed a check for $22,694.45, which represented the ACV award less Plaintiffs' deductible.[27] According to the letter, the payment was made unconditionally.[28] The letter further stated, "With respect to any applicable deadline for the payment of recoverable depreciation, it is [Defendant] Liberty's position that such deadline shall commence to run effective with the date this payment is received by you."[29]

## B.  Procedural Background

According to Plaintiffs' state court petition, "a severe hail storm and/or windstorm" caused "extensive damage" to Plaintiffs' roof and, consequently, "[w]ater intrusion through the roof caused damage throughout the entire home including, but not limited to the ceilings, walls, insulation, and flooring."[30] Plaintiffs further alleged that they submitted a claim to Defendant Liberty for "the

---

[25]    See id.

[26]    See Doc. 14-9, Ex. I to Defs.' Mot. for Summ. J., Letter from J. Mark Kressenberg to J. Ryan Fowler Dated Mar. 19, 2018.

[27]    See id.

[28]    See id.

[29]    Id.

[30]    Doc. 1-2, Ex. 2 to Not. of Removal, Pls.' Orig. Pet. p. 3.

cost of repairs to the [p]roperty, including but not limited to, repair and/or replacement of the roof and interior water damages."[31] The pleading stated that Defendant Liberty assigned Defendant Dixon to adjust the claim but that he "conducted a substandard inspection of Plaintiffs' [p]roperty."[32]

Plaintiffs alleged that Defendant Dixon "was improperly trained and failed to perform a thorough investigation of Plaintiffs' claim" in that he "spent an inadequate amount of time inspecting [the] entire [p]roperty for [s]torm damages," "failed to include all of [the] damages noted upon inspection," "omitted properly covered [s]torm damages" including interior damages, "underestimated and undervalued the cost of the repairs" included in the estimate, and "underestimated the cost of materials required for necessary repairs and improperly withheld prospective contractors' overhead and profit."[33]

Plaintiffs further alleged that Defendant Liberty "failed to thoroughly review and properly oversee the work of its assigned adjusters, including Defendant Dixon, ultimately approving an improper adjustment and an inadequate resolution to Plaintiffs' claim."[34]   According to Plaintiffs' pleading, Defendant Liberty

---

[31]   Id.

[32]   Id.

[33]   Id. pp. 3-4.

[34]   Id. p. 4.

breached the Policy by "fail[ing] to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy."

Against Defendant Dixon, Plaintiffs presented claims of unfair settlement practices under the Texas Insurance Code, fraud, and conspiracy to commit fraud.[35] Against Defendant Liberty, Plaintiffs presented claims of breach of contract, unfair settlement practices under the Texas Insurance Code, common-law bad faith, non-prompt payment of the claim under the Texas Insurance Code, fraud, and conspiracy to commit fraud.[36] Plaintiffs sought full payment of their claim and additional damages resulting from unspecified losses due to nonpayment.[37] They also sought damages for mental anguish/emotional distress and economic hardship.[38] Finally, Plaintiffs sought statutory treble damages with eighteen percent interest, common-law exemplary damages, costs, and attorneys' fees.[39]

On May 12, 2017, Defendants filed an answer and, on May 24, 2017, removed the action to this court on the basis of diversity jurisdiction.[40] On September 20, 2017, the court set October 20,

---

[35]    Id. pp. 8-11.

[36]    See id. pp. 10-15.

[37]    See id. p. 14.

[38]    See id. p. 15.

[39]    See id.

[40]    See Doc. 1, Not. of Removal; Doc. 1-3, Ex. 3 to Not. of Removal, Defs.' Orig. Ans. to Pls.' Orig. Pet.

2017, as the deadline for joining parties and amending the pleadings.[41]  On October 19, 2017, the parties jointly moved to extend certain deadlines by sixty days to allow sufficient time for the completion of the appraisal process.[42]  Among the deadline extensions that the parties sought were those for adding new parties and amending the pleadings.[43]  On October 31, 2017, the court granted the motion in part but denied the request to extend the deadlines for adding new parties and amending the pleadings.[44]

In January 2018, the parties jointly sought additional 120-day extensions on all of the unexpired deadlines, citing the incomplete appraisal process.[45]  The parties did not anticipate amending the pleadings and did not request any extension of time to do so.[46]  On March 9, 2018, the court granted the motion with minor adjustments to the deadlines for the joint pretrial order and the objections to exhibits and witnesses.[47]

In May 2018, the court referred the case to the undersigned.[48]

---

[41]    See Doc. 6, Rule 16 Scheduling Ord. Dated Sept. 8, 2017.

[42]    See Doc. 9, Jt. Mot. to Extend Certain Deadlines.

[43]    See id.

[44]    See Doc. 10, Ord. Dated Oct. 31, 2017.

[45]    See Doc. 12, Jt. Mot. for Trial Continuance & Req. for Am. Scheduling Ord.

[46]    See id.

[47]    See Doc. 13, Ord. Dated Mar. 9, 2018.

[48]    See Doc. 15, Ord. Dated May 3, 2018.

9

Days later, the parties sought another 120-day continuance of the remaining deadlines but did not mention any need to amend the pleadings.[49]  The court again granted a continuance with only minor modifications.[50]

On April 18, 2018, Defendants filed the pending motion for summary judgment and attached as exhibits the Policy, Defendant Dixon's estimate, Mars Roofing's bid, the appraisal award, and letters from Defendant Liberty to Plaintiffs.[51]  Plaintiffs timely responded but submitted no additional summary judgment evidence.[52] The parties filed four additional briefs, and Plaintiffs submitted Defendant Liberty's claim activity report as an exhibit.[53]  After the parties completed briefing, they jointly filed another two motions for continuance, which the court granted.[54]

At no time after the issuance of the appraisal award or Defendant Liberty's payment of $22,694.45, both of which occurred in March 2018, did Plaintiffs seek leave to amend their state-court

---

[49]    See Doc. 16, Jt. Mot. for Trial Continuance & Req. for Am. Scheduling Ord.

[50]    See Doc. 18, Ord. Dated May 11, 2018.

[51]    See Doc. 14, Defs.' Mot. for Summ. J.

[52]    See Doc. 17, Pls.' Resp. to Defs.' Mot. for Summ. J.

[53]    See Doc. 21, Pls.' Suppl. Resp. to Defs.' Mot. for Summ. J.; Doc. 22, Defs.' Reply to Pls.' Resp.; Doc. 23, Defs.' Suppl. Brief in Support of their Mot. for Summ. J.; Doc. 24, Pls.' Reply to Defs.' Suppl. Brief in Support of Defs.' Mot. for Summ. J.

[54]    See Doc. 26, Jt. Mot. for Continuance of Certain Pretrial Deadlines; Doc. 27, Ord. Dated Sept. 19, 2018; Doc. 30, Jt. Mot. for Continuance of Trial & for Am. Scheduling Ord.; Doc. 31, Ord. Dated Nov. 20, 2018.

pleading to include factual allegations related to the appraisal or
to Defendant Liberty's post-appraisal payment.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists on any material fact and the moving party
is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);
Celotex Corp., 477 U.S. at 322; Stauffer v. Gearhart, 741 F.3d 574,
581 (5th Cir. 2014).  A material fact is a fact that is identified
by applicable substantive law as critical to the outcome of the
suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d
624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a
material fact must be supported by evidence such that a reasonable
jury could resolve the issue in favor of either party.  See Royal
v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir.
2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,
depositions, answers to interrogatories, admissions, or affidavits
that demonstrate the absence of genuine factual issues.  Celotex
Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th
Cir. 1992).  If the moving party carries its burden, the nonmovant
may not rest on the allegations or denials in his pleading but must
respond with evidence showing a genuine factual dispute.  Stauffer,

741 F.3d at 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)).

## III. Analysis

Defendants move for summary judgment on all of Plaintiffs' claims. Citing <u>Blum's Furniture Company v. Certain Underwriters at Lloyds London</u>, 459 F. App'x 366 (5th Cir. 2012)(unpublished), Defendants argue that Plaintiffs cannot maintain a claim for breach of the Policy because Defendant Liberty timely paid the full appraisal award. Defendants then contend that Plaintiffs' extra-contractual claims fail because they are founded in the alleged breach of contract.

Plaintiffs argue in response that they are not estopped from pursuing the breach-of-contract claim because Defendant Liberty's payment of the appraisal award was neither timely nor full. Regardless, Plaintiffs contend, <u>USAA Texas Lloyds Company v. Menchaca</u> (hereinafter "<u>Menchaca II</u>"), 545 S.W.3d 479 (Tex. 2018), confirms that Plaintiffs can pursue the extra-contractual claims even if they do not have a valid breach of contract claim.[55]

---

[55]    As Plaintiffs never sought to amend or supplement their state-court petition, it remains the live pleading in this action. Therein, Plaintiffs complain about Defendants' actions during the initial claim adjustment. No factual allegations address the appraisal process or the subsequent payment of the appraisal award. The issues that Plaintiffs raise with regard to the timeliness and fullness of Defendant Liberty's payment or any other matter concerning the appraisal process or award cannot serve as the basis for a breach-of-contract or extra-contractual claim because they were never pled. Plaintiffs' arguments on those issues are relevant only to the court's decision on Defendants' motion for summary judgment.

## A.  Breach-of-Contract Claim Against Defendant Liberty

Plaintiffs contend that Defendant Liberty breached the Policy by failing to adequately compensate Plaintiffs at the time of the initial claim.

An insurer's "tender of the amount owed based on the amount of loss in the appraisal award estops the insured from bringing a breach-of-contract claim against the insurer" and "applies with special force where the parties agreed to provide for a binding appraisal process in their contract." Zhu v. 1st Cmty. Ins. Co., 543 S.W.3d 428, 433-34 (Tex. App.—Houston [14th Dist.] 2018, pet. filed)(citing cases).  With a moderate degree of variations, this estoppel rule has been repeated many times.  See, e.g., Jimenez v. Liberty Ins. Corp., Civil Action No. H-16-1866, 2017 WL 6368663, at *4 (S.D. Tex. Nov. 9, 2017)(slip copy)(quoting Anderson v. Am. Risk Ins. Co., NO. 01-15-00257-CV, 2016 WL 3438243, at *4 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.)(unpublished)) (stating that, "[b]y payment of the full amount of an appraisal award, the insurer 'complies with every requirement of the contract, and it cannot be found to be in breach'"); Nat'l Sec. Fire & Cas. Co. v. Hurst, 523 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2017, pet. filed)(citing Brownlow v. United Servs. Auto. Ass'n, No. 13-03-758-CV, 2005 WL 608252, at *2 (Tex. App.—Corpus Christi Mar. 17, 2005, pet. denied)(unpublished) (stating that, "[g]enerally, tender of the full amount owed

pursuant to the conditions of an appraisal clause is all that is required to estop the insured from raising a breach of contract claim"); Blum's Furniture Co., 459 F. App'x at 368 (quoting Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2004, no pet.))(stating that "timely payment of a binding and enforceable appraisal award" that is accepted by the insured estops the insured "from maintaining a breach of contract claim against [the insurer]").

Additionally, any difference in amount between an initial payment by the insurer and the appraisal award is not evidence of a breach of contract.  See Blum's Furniture Co., 459 F. App'x at 368-69 (citing Breshears v. State Farm Lloyds, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi-Edinburg 2004, pet. denied)(further holding that the prohibition against using the difference as evidence of breach is also especially relevant when the contract in question "provides for resolution of disputes through appraisal"). A Texas intermediate appellate court observed that, by paying the difference following appraisal, the insurer fulfilled its duty to pay the insured all benefits available under the policy.  Biasatti v. GuideOne Nat'l Ins. Co., 560 S.W.3d 739, 742 (Tex. App.—Amarillo 2018, pet. filed).

Without a doubt, the estoppel rule is well established and prevents an insured from pursuing a breach-of-contract claim after receiving a timely and full payment of an appraisal award.

14

Plaintiffs contend that Defendant Liberty's payment did not estop their claim because it was neither timely nor full.

Plaintiffs argue that Defendant Liberty's payment was not timely because the loss-payment provision of the Policy required Defendant Liberty to make payment within five business days of the issuance of the appraisal award.  The argument is not meritorious.

The loss-payment provision specifically required Defendant Liberty to pay a claim within five business day of notifying Plaintiffs that it would pay all or part of the claim. Notification by an insurer that it will pay an insured's claim is a far cry from the issuance of an appraisal award by the appraisal panel.  The provision says nothing about appraisal awards, much less sets a time within which they must be satisfied.  The loss-payment provision of the Policy does not apply to appraisal awards.[56]  In fact, the court found no time requirement in the appraisal provision or any other provision of the Policy.  See Zhu 543 S.W.3d at 437 ("No provision of the policy required that [the insurer] issue the check more promptly . . . .").  Moreover, the appraisal award itself did not set a deadline for payment.

Ten business days after issuance of the appraisal award, Defendant Liberty notified Plaintiffs of its acceptance and issued

---

[56]     The court also finds inapplicable the Policy provision requiring Defendant Liberty to notify Plaintiffs of a decision to pay or deny within fifteen business days of receiving requested information.  Defendants argue that the appraisal award was "requested information," but the provision clearly referred to information requested from Plaintiffs.  As with the loss-payment provision, this provision addressed another aspect of the claims process.

payment at the same time.  Payment was timely.  <u>See</u> <u>Turner v.</u>
<u>Peerless Indem. Ins. Co.</u>, No. 07-17-00279-CV, 2018 WL 2709489, *3
(Tex. App.—Amarillo June 5, 2018, no pet.)(unpublished)(finding
that payment of an appraisal award within eight business days was
timely under the circumstances "given the absence of any expressed
period for satisfying the appraisal award in the insurance
policy"); <u>Hurst</u>, 523 S.W.3d at 843, 845 (finding no timeliness
concern where insurer paid an appraisal award twenty-one business
days after issuance).

Plaintiffs also contend that Defendant Liberty's payment was
not a full payment because it was for the post-depreciation ACV
amount rather than the RCV amount, a difference of $4,606.68.
Plaintiffs urge that the Policy required that the RCV be paid for
losses and that the contractual period pursuant to which Plaintiffs
could have recovered that difference expired long before the
appraisal award issued.  This argument also is meritless.

Although the policy provided for the payment of RCV subject to
certain limitations, it explicitly stated that Defendant Liberty
would pay only the ACV until actual repairs were completed.
Plaintiff cites to nothing in the Policy that waives this right for
appraisal awards.  The issue certainly is not addressed in the
appraisal provision.  With regard to the expiration of any time
frame during which repairs needed to be made to recover
depreciation, Plaintiffs are "estopped from relying on the delay

caused by the appraisal process as a basis for [their] breach of contract claim." Jimenez, 2017 WL 6368663, at *4. Payment was full. See id. at **1, 4 (finding payment of ACV triggered estoppel rule) Turner, 2018 WL 2709489, at *3 (same); Zhu, 543 S.W.3d at 431, 435 (same).

Moreover, the facts here do not lend themselves to a finding that Defendant Liberty breached the contract. Plaintiffs filed a claim, and, three days later, an adjuster inspected the property and estimated the amount of loss. Within a week of the Plaintiff's claim, Defendant Liberty sent Plaintiffs a letter that enclosed Defendant Dixon's estimate report and explained that the amount of loss did not exceed the Policy deductible. Defendant Liberty later acquired an estimate that had been provided to Plaintiffs by a roofing company, which also totaled less than Plaintiffs' deductible. Nearly two years later, Plaintiffs filed this lawsuit to challenge Defendant Liberty's determination. A few months after that, Defendant Liberty invoked the appraisal process to have independent appraisers determine the amount of covered loss. Ten business days after the issuance of the appraisal award, Defendant Liberty notified Plaintiffs' attorney that it accepted the award and enclosed a check for the award's ACV determination less Plaintiffs' deductible.

Defendant Liberty timely tendered the full amount of the loss in compliance with the appraisal award and the Policy. Plaintiff

17

is therefore estopped from pursuing a breach-of-contract claim. Furthermore, Plaintiff failed to produce any evidence of breach. Defendant Liberty is entitled to summary judgment on this claim.

## C.  **Extra-Contractual Claims Against Defendants**

Plaintiff asserted statutory unfair-settlement practices, common-law bad faith, statutory prompt-payment violations, and common-law fraud and conspiracy to commit fraud.  All of these claims arose from Plaintiffs' allegation that Defendants' initial loss estimate, pursuant to Defendant Dixon's inspection, was inadequate.

### 1.  **Unfair-Settlement Practices and Common-Law Bad Faith**

The Texas Insurance Code allows claims of "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] in the business of insurance."  Zhu, 543 S.W.3d at 437 (quoting Tex. Ins. Code § 541.151).  Violative acts also constitute violations of the Deceptive Trade Practices Act.  See id. (citing Tex. Bus. & Com. Code § 17.50(a)(4)).

In order be entitled to damages beyond policy benefits, an insured "must establish that the statutory violation caused an injury that is independent from the loss of benefits." Id. (citing USAA Tex. Lloyds Co. v. Menchaca (hereinafter "Menchaca I", No. 14-721, 2017 WL 1311752 (Tex. Apr. 7, 2017), withdrawn & superseded by Menchaca II, 545 S.W.3d at 484 ("We unanimously reaffirm the legal principles and rules announced in [our prior] opinion, but we

disagree on the procedural effect of those principles in this case.")).  Plaintiffs' common-law bad faith claim is also subject to the independent-injury rule.  See Menchaca II, 545 S.W. at 500; Hurst, 523 S.W.3d at 848 (citing Menchaca I).

Contrary to Plaintiffs' contentions, "The independent injury rule is alive and well, as reiterated by the Texas Supreme Court in its recent Menchaca [II] opinion."  Turner, 2018 WL 2709489, at * 4.  The Menchaca II opinion explained the two aspects of the rule: (1) "[I]f an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits;" and (2) "[A]n insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of benefits." Menchaca II, 545 S.W. 3d at 499-500.

Although the Menchaca II opinion reaffirmed "'the possibility' that a statutory violation could cause an independent injury," it recognized that a "successful independent-injury claim would be rare" and that the court "in fact ha[d] yet to encounter one."  Id. at 500.  The court continued, "[t]his is likely because the Insurance Code offers procedural protections against misconduct likely to lead to an improper denial of benefits and little else." Id.  The court declined "to speculate what would constitute a

19

recoverable independent injury." Id.

In Zhu, the insured complained that the adjuster "conducted a substandard investigation and inspection of the property, prepared a report that failed to include all of the damages observed during the inspection, and undervalued the damages observed during the inspection" and that the insurer "performed an outcome-oriented investigation of [the] claim, which allegedly resulted in a biased, unfair, and inequitable evaluation of [the] losses." Id. at 438. The court found that the insured received all the benefits to which he was entitled under the policy in the form of an initial payment and the payment of the appraisal award and did not allege "any act so extreme as to cause independent injury." Id. (citing Menchaca I).

Here, Plaintiffs asserted unfair-settlement practices against Defendants for: (a) misrepresenting material facts relating to coverage; (b) failing to make a good faith attempt to effectuate a prompt, fair, and equitable settlement of the claim even though liability was reasonably clear; (c) failing to promptly explain the reasons for the inadequate offer; (d) failing to affirm or deny coverage within a reasonable time; (e) failing to conduct a reasonable investigation; (f) omitting or underestimating covered damages; and (h) failing to conduct a reasonable inspection. Plaintiffs' bad-faith claim against Defendant Liberty was based on the allegation that it refused to pay despite reasonably clear

liability.

Like the insured in <u>Zhu</u>, these claims were all based upon the initial investigation and claim adjustment. Defendant Liberty immediately initiated the investigation; the property was timely inspected; and Defendant Liberty sent Plaintiffs the estimate and a letter explaining that the estimated covered damages did not exceed the Policy deductible. Defendant Liberty never denied coverage. Ultimately, Plaintiffs' right to receive the full extent of the Policy benefits was satisfied and the inadequacy of the initial estimate was resolved by payment of the appraisal award. Plaintiffs have not alleged any act so extreme as to cause independent injury, nor have they produced any evidence of an injury that is independent from the loss of benefits. <u>See</u> <u>Hurst</u>, 523 S.W.3d at 848 (citing <u>Menchaca I</u>)(finding, pursuant to a similar set of facts, that the insured received all benefits to which he was entitled and did not allege "any act so extreme as to cause independent injury").

Defendants are entitled to summary judgment on Plaintiffs' unfair-settlement and bad-faith claims.

**2. Prompt Payment**

Timely payment of the entire appraisal award "precludes as a matter of law a recovery on a claim under the prompt-payment statute." <u>Marchbanks v. Liberty Ins. Corp.</u>, 558 S.W.3d 308, 312 (Tex. App.—Houston [14th Dist.], pet. filed)(citing <u>Zhu</u>, 543 S.W.3d

436-37; Hurst, 523 S.W.3d at 847).   In Marchbanks, the court dismissed arguments that violations allegedly occurring before the insurer invoked the appraisal process survived the full and complete payment of an appraisal award.   See id. at 311-12 (addressing the plaintiff's claims that the insurer failed to request items it reasonably believed were required and failed to timely accept or reject claim after receiving those items).

Because Plaintiffs never amended or supplemented their original claim, the allegations upon which Plaintiffs based their prompt-payment claims, as in Marchbanks, related only to the initial claim adjustment rather than the delay caused by the appraisal process.   Even if they had amended, Plaintiffs could not have maintained the prompt-payment claims.   Those claims are precluded.

### 3.  Fraud and Conspiracy to Commit Fraud

A fraud claim requires proof:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

Saenz v. Gomez, 899 F.3d 384, 391 (5th Cir. 2018)(quoting In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001)).   An actionable claim based on conspiracy to commit fraud requires the following proof:

> (1) two or more persons; (2) an object to be accomplished
> (in this case fraud); (3) a meeting of the minds on the
> object or course of action; (4) one or more unlawful,
> overt acts; and (5) damages as a proximate result.

Beddingfield v. Beddingfield, No. 10-15-00344-CV, 2018 WL 6378553,

at *12 (Tex. App.—Waco Dec. 5, 2018, no pet.)(unpublished)(quoting

Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005)).

Plaintiffs offer no argument in their summary judgment

briefing in defense of their claims of fraud and conspiracy to

commit fraud.  Whether they intended to abandon those claims is not

clear.  Regardless, Plaintiffs also failed to produce any evidence

supporting these claims and, thus, wholly fail to meet their burden

on summary judgment.

Defendants are entitled to summary judgment on Plaintiffs'

claims of fraud and conspiracy to commit fraud.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants'

Motion for Summary Judgment be **GRANTED**.  Plaintiffs' request for a

hearing on Defendants' motion for summary judgment is **DENIED**.

The Clerk shall send copies of this Memorandum and

Recommendation to the respective parties who have fourteen days

from the receipt thereof to file written objections thereto

pursuant to Federal Rule of Civil Procedure 72(b) and General Order

2002-13.  Failure to file written objections within the time period

mentioned shall bar an aggrieved party from attacking the factual

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 17<u>th</u> day of January, 2019.

_____
U.S. MAGISTRATE JUDGE